UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JASON EMER MD NEW YORK CITY,
and DR. JASON EMER, MD,

        Plaintiffs,

     -against-

MASON KELLEY,

        Defendant.

-----------------------------------------------------------------X

Civil Action No.: 1:26-cv-05862 (JSR)

**DEFENDANT KELLEY MASON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND FOR ATTORNEYS' FEES**

Defendant Mason Kelley ("Kelley") respectfully submits this Memorandum Of Law in opposition to Plaintiffs Jason Emer MD New York City (the "Company") and Dr. Jason Emer, MD's ("Emer," together "Plaintiffs") Motion To Remand And For Attorneys' Fees (ECF Nos. 5-6, the "Motion").

i

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................... 4

    A.    Kelley's California Employment ................................................................................ 4

    B.    Kelley's First-Filed California Action........................................................................ 4

    C.    Plaintiffs' Complaint In This Action .......................................................................... 5

    D.    Removal And The Parties' Pre-Motion Correspondence ...................................... 6

    E.    The Motion And Its "Supporting Evidence" ........................................................... 7

III.  LEGAL STANDARDS ........................................................................................................ 8

IV.   ARGUMENT ...................................................................................................................... 10

    A.    Emer's Citizenship Must Be Disregarded Because He Is, At Most, A Nominal Plaintiff
    With No Individual Claim, Joined Solely To Defeat Diversity ................................................ 10

        i.    Federal courts disregard the citizenship of nominal and improperly joined parties—
        plaintiffs included ..................................................................................................... 10

        ii.   Emer has no possible individual claim against Kelley .................................... 11

        iii.  The purpose and effect of Emer's joinder confirm that his citizenship should be
        disregarded................................................................................................................ 14

    B.    With Emer's Citizenship Disregarded, Complete Diversity Exists And The Amount In
    Controversy Is Satisfied.......................................................................................................... 16

    C.    Plaintiffs' Domicile Evidence Does Not Compel Remand; At Most, It Frames A Factual
    Question Warranting Jurisdictional Discovery........................................................................ 17

    D.    Alternatively, The Court May Resolve Defendant's Straightforward Personal-Jurisdiction
    Defense First ............................................................................................................................ 19

    E.    Plaintiffs' Request For Fees And "Leave" To Seek Sanctions Should Be Denied .......... 20

V.    CONCLUSION.................................................................................................................... 21

ii

Cases

*Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985)..........................................................................12

*Bd. 7 of Borough of Manhattan v. Schaffer*, 84 N.Y.2d 148, 155 (1994)...................................16

*Blakeman v. Conroy*, 512 F. Supp. 325, 327 (E.D.N.Y. 1981)......................................................9

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)........................9

*Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193-95 (2d Dep't 1980).....................13

*Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011)..........................20

*Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152...........................................................9

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ...................................................................19

*Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185-86 (5th Cir. 1990)...............................................10

*Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000).............2, 9, 10, 13-15

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) .........................................18

*Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) ...............................................................9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ....................................................12

*Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994))..........................................10

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)..................................................3, 20

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).......................................... 2. 9, 10, 15

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)...........................................15

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193-94 (2d Cir. 2003) .........................9-10

*Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ...............................................9

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)...........................9, 13-15

*Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200-02 (2d Cir. 2003).................11

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) .................................................3, 19

*Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182, 188-90 (1924) ......................9, 10, 15

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981))...............................................................................................................................10-11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431-32 (2007) ..................19

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) .....................................9

*United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) .......................................................................8

*Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 53-54 (2d Cir. 2019) ................................9, 17

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-08 (2d Cir. 2008) ....12

*Walden v. Fiore*, 571 U.S. 277, 284-86 (2014)............................................................................19

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) ...................................14, 19

*Wolde-Meskel v. Vocational Instruction Project Cmty. Service., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ........................................................................................................................................9

Statutes

28 U.S.C. § 1332(a) ....................................................................................................................6, 8

28 U.S.C. § 1441...........................................................................................................................8, 16

28 U.S.C. § 1446.........................................................................................................................16, 20

28 U.S.C. § 1447………………………………………………………………………...…20, 21

C.P.L.R. 302(a) ..............................................................................................................................19

Fed. R. Civ. P. 17(b) .....................................................................................................................16

## I.     PRELIMINARY STATEMENT

Plaintiffs' Motion rests on a single unsubstantiated premise—that Emer is "domiciled" in California—and asks the Court to look no further.  But the jurisdictional puzzle the Motion purports to solve is entirely of Plaintiffs' own making.  Plaintiffs chose to sue through "JASON EMER MD NEW YORK CITY," an entity whose existence Plaintiffs plead only "upon information and belief."  Compl. ¶ 4.  In reality, however, it appears that no such entity exists. Decl. Evan S. Weiss ("Weiss Decl."), ¶ 2, Ex. 1.  Plaintiffs chose to allege that this New York practice—with its "principal place of business" at 57 West 57th Street in Manhattan—was managed by Emer, employed Kelley, and "bore the direct financial burden of" his compensation, and they designated New York County as the venue on precisely that basis.  ECF No. 1-1 ("Compl.") ¶¶ 2, 4, 6; Summons at 1.  Plaintiffs chose to say nothing at all in their Complaint about where Emer resides or of what State he is a citizen.  Plaintiffs included Emer as an individual co-plaintiff even though the Complaint alleges no injury to him—only that, "[t]o the extent" he made unspecified personal payments, such amounts would be "recoverable."  Compl. ¶¶ 7, 34. The Complaint does not allege that any such personal payments were ever made.

Kelley removed this action, taking Plaintiffs' pleading at its word: a New York practice, headquartered in Manhattan, suing a California defendant for more than $400,000 in specifically quantified losses.  ECF No. 1.  Within days, Plaintiffs' counsel demanded that Kelley "voluntarily" undo the removal, announcing for the first time that Emer—the owner and "principal physician" of the Manhattan practice—is in fact domiciled in California.  Defense counsel responded in good faith, asking for "anything demonstrating" Emer's claimed domicile and agreeing to "review it, evaluate, and consider our position," and—in his very first response—identified the dispositive problem with Plaintiffs' theory: "it's not readily apparent how Dr. Emer, individually, is a proper

1

plaintiff in this lawsuit." ECF No. 5-2 at 4. Plaintiffs' counsel produced a driver's license and, later, a single utility bill. Each time, defense counsel explained why those documents were not dispositive, renewed the request for anything more ("If you have anything else, we'd be happy to consider it"), and reiterated that Emer "appears to be included in the lawsuit solely to defeat diversity jurisdiction." ECF No. 5-2 at 6, 11. Plaintiffs' counsel never provided anything further and never addressed the improper-joinder issue—not in the correspondence, and, tellingly, not anywhere in the Motion itself. *See generally* ECF No. 5-2.

The Motion should be denied. Emer's citizenship—wherever it lies—is irrelevant, because federal courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); *see also Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000) ("[T]he fraudulent joinder doctrine also requires the court to disregard the presence of a plaintiff who is not a 'real party in interest.'"). On the Complaint's face, Emer has no individual claim: the Company—not Emer—was the alleged employer that paid every dollar of Kelley's compensation, and Emer's only asserted "injury" is a conditional hypothetical. His sworn declaration in support of this very Motion confirms the point: his connection to the Company is "a professional and commercial matter only," and he identifies no personal payment, guarantee, or loss of any kind. ECF No. 5-3 ¶ 7; *see also* ECF No. 1-1. Once Emer's citizenship is disregarded—or Emer is dropped under Rule 21 as the dispensable party he is—complete diversity indisputably exists between the New York Company (as Plaintiffs have pleaded and sworn it to be) and Kelley, a Californian, and the amount in controversy is not contested.

At minimum, the Court should not remand on this record. Plaintiffs' evidence—a driver's license that on its face issued in 2022, a utility bill, and a sworn declaration written in conclusory

2

terms—speaks to potential residence only, not to the "totality of the evidence" standard Plaintiffs themselves invoke. Counsel's assertion of Kelley's supposed "judicial admission" is made only "[u]pon information and belief" about a different pleading, in a different case, that itself alleged only residence, on information and belief. If the Court concludes that Emer's domicile matters, the appropriate course is targeted jurisdictional discovery—not remand.  And if the Court harbors any doubt on the jurisdictional question, it retains discretion to resolve Kelley's straightforward personal-jurisdiction defense first.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).

Finally, Plaintiffs' request for fees—and for "leave" to seek sanctions—should be denied. Kelley removed based on the face of a Complaint that Plaintiffs drafted, which pleaded a Manhattan-based plaintiff, a Manhattan venue, and nothing at all about Emer's citizenship other than the allegation that Emer apparently oversaw an expansive New York based business.  That is the definition of an objectively reasonable removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (holding that fees should generally be awarded only where the removing party "lacked an objectively reasonable basis for seeking removal").  Fees are doubly inappropriate where, as here, the removing party's counsel promptly and repeatedly sought to resolve the issue without motion practice, and the movants failed to supply sufficient information or engage with the dispositive joinder question they still have not answered. The information that Plaintiff's counsel provided before filing this motion, consisting of a driver's license and a utility bill, are not dispositive of domicile. Plaintiff did not provide his sworn declaration prior to filing it with the Court.

3

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Kelley's California Employment

Kelley is, and at all relevant times was, a citizen and domiciliary of Los Angeles, California, where Plaintiffs personally served him.  Decl. Mason Kelley ("Kelley Decl.") ¶¶ 2-3; ECF No. 1-2 (Proof of Service).

In September 2025, Kelley applied for, interviewed for, and accepted a sales position with Jason J. Emer, MD, Professional Corporation—a California professional corporation with its principal office at 9201 Sunset Boulevard, West Hollywood, California, of which Emer is the sole director.  Kelley Decl. ¶ 4, Ex. 1; Weiss Decl. ¶ 3, Ex. 2.  Kelley's offer letter and job description issued from that California entity, fixed his work location in West Hollywood, and required him to follow "California law."  Kelley Decl. ¶ 4, Ex. 1.  With the exception of one five-day trip to New York to see Emer's New York office, Kelley performed his work exclusively from the practice's Beverly Hills, California location.  *Id.* ¶ 4.  Throughout his roughly 90-day employment, Kelley only spoke with approximately ten (10) potential New York patients.  *Id.* ¶ 5.  Every other potential patient and patient Kelley interacted with was located in California.  *Id.*  Kelley's supervisors directed his work from California.  *Id.*  Kelley's wages were paid in California, by "Jason J. Emer, MD, Professional Corporation," which is a California entity.  *Id.*; Weiss Decl. ¶ 3, Ex. 2.  Kelley has never been employed by "Jason Emer MD New York City" or by Emer individually.  *Id.* ¶ 6.

### B.    Kelley's First-Filed California Action

On April 14, 2026, Kelley filed a Complaint in the Superior Court of California, County of Los Angeles, Case No. 26STCV12029, asserting claims for sexual harassment, discrimination, retaliation, wrongful termination, and wage violations against his actual former employer—Jason

4

J. Emer, MD, Professional Corporation—and against Emer and Jose Bodon-Orsini individually. Weiss Decl. ¶ 4, Ex. 3.  The Professional Corporation was served on April 22, 2026; Bodon-Orsini was served on April 27, 2026; and Emer was served on May 5, 2026.  *Id.* ¶ 5, Ex. 4.

### C.    Plaintiffs' Complaint In This Action

Plaintiffs' New York Complaint is dated April 20, 2026—six days after Kelley filed his California action—and was filed on May 4, 2026, one day before Emer was served in California. Compl. at 1, 13; Weiss Decl. ¶ 5, Ex. 4.  It asserts three causes of action against Kelley arising out of his ninety-day employment: faithless servant, breach of fiduciary duty, and common-law fraud, all premised on allegedly unauthorized patient discounts and deficient follow-up.  Compl. ¶¶ 35-68.

Three features of the Complaint matter here.

**First**, the named corporate plaintiff—"JASON EMER MD NEW YORK CITY"—is alleged, "upon information and belief," to be "a medical practice with its principal place of business located at 57 W 57TH ST, Suite 611, New York, New York," and venue is laid in New York County on that basis.  Compl. ¶¶ 2, 4; Summons at 1.  But a search of the records of the New York Department of State, Division of Corporations, discloses no such entity under that name or any variant.  Weiss Decl. ¶ 2, Ex. 1.

**Second**, the Complaint alleges the Company—not Emer—was the employer that bore the cost of Kelley's employment: "all salary and payroll expenses were funded by Plaintiff JASON EMER MD NEW YORK CITY, which thereby bore the direct financial burden of Defendant's compensation." Compl. ¶ 6.  As to Emer, the Complaint alleges only that he is the Practice's "founder, owner, and principal physician," and that "[t]o the extent Dr. Emer made personal payments, guarantees, or contributions to cover shortfalls . . . those amounts are recoverable by

Dr. Emer individually." *Id.* ¶¶ 5, 7, 34.  No personal payment, guarantee, or contribution is actually alleged. The Complaint does not allege that Kelley owed any duty or caused any harm to Emer personally.

**Third**, the Complaint is silent as to the citizenship or residence of either Plaintiff: it nowhere alleges where Emer resides, where he is domiciled, or of what State he is a citizen.

      **D.**      **Removal And The Parties' Pre-Motion Correspondence**

Kelley was personally served at his Los Angeles home on June 12, 2026, and timely removed on July 7, 2026, invoking diversity jurisdiction under 28 U.S.C. § 1332(a).  ECF No. 1. The Notice of Removal alleged (expressly "upon information and belief," and citing the Complaint's own allegations) that the Company is a New York entity with its principal place of business in Manhattan; that Emer, the owner and "principal physician" of that Manhattan practice, is a citizen of New York; that Kelley is a citizen of California; and that the amount in controversy comfortably exceeds $75,000 given the Complaint's quantified allegations of approximately $332,912 in unauthorized discounts, approximately $82,300 in further discounts, and demanded forfeiture of all compensation paid to Kelley.  *Id.*; Compl. ¶¶ 24, 27, 46, 69.

On July 10, 2026, defense counsel emailed courtesy copies of the removal papers to Plaintiffs' counsel.  ECF No. 5-2 at 2.  On July 13, Plaintiffs' counsel responded that Emer and Kelley "are both domiciled in the state of California," threatened sanctions, and demanded withdrawal of the removal.  ECF No. 5-2 at 3.  Defense counsel replied the same day:

> We know that Emer does have a connection with California, but the Complaint suggests extensive ties in New York, so if you can send over anything demonstrating that he is domiciled there and not in New York, we will of course review it, evaluate, and consider our position.  However, we will also note that it's not readily apparent how Dr. Emer, individually, is a proper plaintiff in this lawsuit.

ECF No. 5-2 at 4.

Plaintiffs' counsel sent a photograph of Emer's driver's license.  ECF No. 5-2 at 4-5. Defense counsel acknowledged it on July 15, explained that a license "alone, will not be dispositive of domicile and citizenship," invited counsel to send "anything else" for consideration, and again flagged that "Emer, individually, was not properly joined to this lawsuit."  ECF No. 5-2 at 6.  On July 16, Plaintiffs' counsel sent a single Los Angeles Department of Water and Power bill together with a recitation of domicile case law, and stated "[f]or the final time" that he would seek sanctions. ECF No. 5-2 at 8-9.  Defense counsel responded within the half hour:

> We understand your position, but while a utility bill may demonstrate property ownership and potentially residence, it does not alone show domicile as outlined in your email below.  It also does not do anything to demonstrate whether his ties to New York (which, according to the Complaint, includes owning and operating a New York specific business in which he was significantly involved) are more extensive and therefore sufficient to establish domicile here, or address our position that Dr. Emer is not a proper party to this lawsuit and therefore appears to be included in the lawsuit solely to defeat diversity jurisdiction.

ECF No. 5-2 at 11.

Plaintiffs' counsel never responded to either request.  He identified no additional evidence of Emer's claimed domicile—no tax filings, no voter registration, no account of where Emer actually spends his time—and he never addressed, in correspondence or otherwise, how Emer individually could be a proper plaintiff.  *See generally* ECF No. 5-2.  Nor did Plaintiff's counsel ever provide (and neither does Emer in his Declaration here) ever respond to provide any insight into Emer's actual ties (real estate or otherwise) to New York for comparison to the limited and conclusory information provided about California.  *Id.*

### E.       The Motion And Its "Supporting Evidence"

Plaintiffs filed the Motion on July 21, 2026.  Plaintiffs argue only that Emer is domiciled in California and that his California citizenship destroys complete diversity.  Plaintiffs do not

contest the Company's New York citizenship, do not contest the amount in controversy, do not

identify any procedural defect in the Removal, and—despite three written invitations—do not say

a single word about whether Emer, individually, has any claim in this case. ECF Nos. 5-6. The

Motion's evidence consists of: (1) Emer's California driver's license, issued over four years ago

(ECF No. 5-4); (2) one LADWP bill dated June 8, 2026, covering April 8 through June 6, 2026

(ECF No. 5-5); (3) Emer's admission that he "own[s] and [is] affiliated with a business located in

the State of New York" (which he baldly concludes is "a professional and commercial matter

only") (ECF No. 5-3 ¶ 7); and (4) a hearsay declaration from Plaintiffs' counsel asserting—"[u]pon

information and belief"—that Kelley "admitted" Emer's California domicile in the California

action (ECF No. 5-1 ¶ 11). In fact, Kelley's California complaint alleges, itself on information

and belief, only that Emer was "residing in Los Angeles County"—an allegation of residence, not

domicile. Weiss Decl. ¶ 4, Ex. 3.

Notably absent is: (1) any identification of any personal payment or personal loss by Emer

connected to Kelley that would show that Emer, individually, has any discernible claim against

Kelley; and (2) any non-conclusory information of Emer's actual ties to New York (for example,

real estate, family, etc.).

## III.   <u>LEGAL STANDARDS</u>

A civil action filed in state court may be removed if the District Court would have original

jurisdiction, 28 U.S.C. § 1441(a), including diversity jurisdiction over controversies exceeding

$75,000 between citizens of different States. *Id.* § 1332(a)(1). The removing party bears the

burden of establishing federal jurisdiction. *United Food & Com. Workers Union, Loc. 919, AFL-*

*CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Jurisdictional

facts are assessed as of the time of removal. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303

8

U.S. 283, 291 (1938); *Wolde-Meskel v. Vocational Instruction Project Cmty. Service., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999).  An individual's citizenship is his domicile: physical presence plus intent to remain; a person may have many residences but only one domicile.  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 53-54 (2d Cir. 2019); *see also Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998).

Complete diversity, however, is measured against the *real* parties to the controversy: "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  *Navarro*, 446 U.S. at 461; *accord Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193-94 (2d Cir. 2003).  Relatedly, under the fraudulent-joinder doctrine, the Court may disregard the citizenship of a party joined "to defeat diversity," upon a showing, "by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings," that a claim can be stated involving the jurisdiction-spoiling party in state court.  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004).  The doctrine traces to the Supreme Court's instruction that the right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152; *see also Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182, 188-90 (1924) (diversity is not defeated by the presence of a "nominal" party with no real interest in the controversy).  And its application is not confined to defendants: "[a]lthough most frequently applied to the joinder of unnecessary defendants, the fraudulent joinder doctrine also requires the court to disregard the presence of a plaintiff who is not a 'real party in interest.'"  *Intershoe*, 97 F. Supp. 2d at 474 (citing *Blakeman v. Conroy*, 512 F. Supp. 325, 327 (E.D.N.Y. 1981), and *Saxe,*

*Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981)).

While removal statutes are construed strictly (*Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274

(2d Cir. 1994)), that canon does not license jurisdictional manipulation. *E.g.*, *Grassi v. Ciba-

Geigy, Ltd.*, 894 F.2d 181, 185-86 (5th Cir. 1990) (disregarding a non-diverse co-plaintiff joined

to destroy diversity).

IV.   **ARGUMENT**

    A.   **Emer's Citizenship Must Be Disregarded Because He Is, At Most, A Nominal Plaintiff With No Individual Claim, Joined Solely To Defeat Diversity**

        i.   *Federal courts disregard the citizenship of nominal and improperly joined parties—plaintiffs included*

Diversity jurisdiction "rest[s] . . . only upon the citizenship of real parties to the

controversy." *Navarro*, 446 U.S. at 461. Accordingly, the Court looks past the caption to the "real

and substantial parties" when measuring diversity. *Oscar Gruss & Son, Inc.*, 337 F.3d at 193-94.

That is because a litigant cannot manufacture—or destroy—diversity by decorating the caption

with parties who have no stake in the dispute: "the fraudulent joinder doctrine also requires the

court to disregard the presence of a plaintiff who is not a 'real party in interest.'" *Intershoe*, 97 F.

Supp. 2d at 474; *see also Salem Trust Co.*, 264 U.S. at 189-90.

To prevail, the removing defendant must identify "a flaw specific to the joinder of the non-

diverse party"—a defect in that party's own entitlement to sue, as distinct from a generalized attack

on the merits of the claims. *Intershoe*, 97 F. Supp. 2d at 475. And the paradigm of such a joinder-

specific defect is the very configuration presented here: "because corporate shareholders have no

standing to sue for injuries to the corporation, shareholders were improper plaintiffs" whose

presence—and citizenship—the court disregards. *Id.* (describing *Saxe, Bacon & Bolan*, 521 F.

Supp. at 1048); *see also Saxe, Bacon & Bolan*, 521 F. Supp. at 1047-48 (individual shareholder-plaintiffs whose citizenship would otherwise have destroyed complete diversity were not real parties in interest), *aff'd*, 710 F.2d 87, 89-90 (2d Cir. 1983) ("We will not attempt to enlarge upon the district court's thorough and well-reasoned discussion."); *Blakeman*, 512 F. Supp. at 327 ("[T]he presence of a non-diverse plaintiff may be ignored if it is not a 'real party in interest.'"). Whether the analysis is framed as fraudulent joinder or as the nominal-party rule, the question is the same: does Emer, individually, have any real claim against Kelley? **He does not**.

### ii.    *Emer has no possible individual claim against Kelley*

Plaintiffs' own pleading and Motion papers make clear that Emer has no possible individual claim against Kelley.  The point is made all the more patent with the additional supporting evidence provided by Kelley here.

**First**, the Complaint affirmatively alleges that the Company, not Emer, was Kelley's employer and paid Kelley's wages: "all salary and payroll expenses were funded by Plaintiff JASON EMER MD NEW YORK CITY, which thereby bore the direct financial burden of Defendant's compensation."  Compl. ¶ 6.  Every theory Plaintiffs advance—faithless-servant forfeiture, breach of the employee's duty of loyalty, and fraud on the "Practice"—belongs to the employer or principal to whom the duties allegedly ran.  *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200-02 (2d Cir. 2003) (faithless-servant doctrine remedies disloyalty "to his employer"; forfeiture runs to the employer that paid the compensation).  Emer, on the Complaint's own account, paid nothing and employed no one; the compensation subject to the demanded forfeiture was paid by the Company, and the discount and pipeline losses were "borne on the books of JASON EMER MD NEW YORK CITY."  Compl. ¶¶ 6, 34, 46.

11

**Second**, the only "injury" pleaded for Emer is expressly a hypothetical conditional: "[t]o the extent Dr. Emer made personal payments, guarantees, or contributions to cover shortfalls created by Defendant's conduct, those amounts are recoverable by Dr. Emer individually." Compl. ¶ 7, 34. The Complaint never alleges that any such payment, guarantee, or contribution was actually made—not one dollar, date, or transaction. A conditional allegation that a plaintiff *may* have been injured *if* something *may* have happened is the definition of a hypothetical injury and states no claim under any pleading standard, state or federal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (injury must be "actual or imminent, not conjectural or hypothetical"). Emer's own Declaration in support of the Motion (submitted months into the dispute and after the issue was squarely raised three times) conspicuously supplies nothing: it describes his New York business ownership as "a professional and commercial matter only" and identifies no personal payment, guarantee, or loss. ECF No. 5-3 ¶ 7. If an individual claim existed, that was the moment to say so.

**Third**, to the extent Emer's theory is that Kelley's conduct diminished the value or revenues of the Practice that Emer founded and owns (Compl. ¶ 5), that injury is derivative of the Company's and belongs to the Company alone. New York law is emphatic that an owner may not sue in his individual capacity for harms to the business; "allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985); *see also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-08 (2d Cir. 2008) (plaintiff must assert its own injury rather than that of distinct person/entity). Thus, under the very New York law Plaintiffs invoke, there is "no

12

possibility" that Emer can recover individually on these claims in state court. *Pampillonia*, 138 F.3d at 461.

**Fourth**, the fraud count fares no better as an individual claim. The alleged misrepresentations—Kelley's September 24, 2025 workplace emails promising to "call the patient," "own the pricing error," and "cover the difference"—were assurances to his employer about employment duties, and the pleaded reliance and damages are the **Company's**: continued payment of Kelley's compensation (which the Company paid, Compl. ¶ 6), uncorrected discounts on the Company's invoices, and the Company's remediation costs. Compl. ¶¶ 64-66. Under New York's out-of-pocket rule, a fraud plaintiff may recover only his **own** actual pecuniary loss; Emer pleads none.[1] *See Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193-95 (2d Dep't 1980).

*Intershoe* marks the line that Emer's joinder crosses. There, Judge Wood declined to find fraudulent joinder because the individual co-plaintiff, Guarino, was "far from the mere 'nominal' plaintiff against whom the fraudulent joinder doctrine is aimed": Guarino had been sued personally—as the sole defendant—in the allegedly malicious litigation at the center of the complaint, which alleged "harms inflicted upon Guarino directly, not simply indirect injuries derived from his interest in Intershoe." *Intershoe,* 97 F. Supp. 2d at 474-75. Emer stands on the opposite side of that line.

Here, the Complaint names the Company as Kelley's employer and sole bearer of every quantified loss. Compl. ¶¶ 6, 24, 27, 34, 46. It pleads for Emer nothing beyond indirect

---

[1] The fraud count also fails in its entirety—as to both Plaintiffs—under Rule 9(b) and New York law because, among other defects, it infers fraudulent intent solely from alleged nonperformance. *See Brown*, 432 N.Y.S.2d at 195. For present purposes, the Court need only conclude that Emer **individually** has no possible fraud claim, because he pleads neither his own reliance nor his own out-of-pocket loss.

hypothetical injury derived from his ownership of the Company—and even that only conditionally, "[t]o the extent" unpled personal payments were ever made. *Id.* ¶¶ 7, 34. That is precisely the shareholder-plaintiff pattern *Intershoe* identifies as improper joinder, not the direct-victim pattern that defeated the doctrine there. Nor is Kelley's showing the kind of across-the-board merits attack *Intershoe* found insufficient: the defect identified here is "specific to the joinder of the non-diverse party." 97 F. Supp. 2d at 475. Whatever the merits of the pleaded claims, they belong, if to anyone, to the Company alone.

Nor can Plaintiffs save Emer's joinder by pointing to the Complaint's occasional use of the collective term "Plaintiffs." Group pleading does not convert the Company's claims into Emer's, particularly where the Complaint's specific allegations—the Company funded "all" payroll; the losses sat on the Company's "books"; Emer's recovery exists only "[t]o the extent" of unpled personal payments—negate any individual stake. Compl. ¶¶ 6-7, 34. Where a plaintiff's own specific allegations foreclose the claim, the "no possibility" standard is satisfied. *Pampillonia*, 138 F.3d at 461-62 (affirming denial of remand where the complaint's allegations foreclosed recovery against the joined party); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001).

### iii.    *The purpose and effect of Emer's joinder confirm that his citizenship should be disregarded*

The circumstances leave little doubt about why an individual with no alleged injury appears in this caption.

Kelley sued his actual California employer—and Emer personally—in California on April 14, 2026. Six days later, Plaintiffs' counsel dated this Complaint, which he filed on May 4, 2026, the day before Emer was served in the California action. Rather than sue in the name of Kelley's

14

actual employer—the California Professional Corporation, whose appearance as plaintiff would have exposed the claims to California's compulsory cross-complaint statute and destroyed any New York venue theory—Plaintiffs sued through a fictitious New York entity pleaded into existence "upon information and belief," and appended Emer individually.  Compl. ¶ 4; Weiss Decl. ¶ 2, Ex. 1.  When Kelley removed, Emer's function in the caption was revealed: he is the vehicle for the California citizenship on which the Motion entirely depends. That is precisely the maneuver—placing a party with "no real connection with the controversy" on the record to defeat the removal right—that the fraudulent-joinder and nominal-party doctrines exist to police.  *See Navarro Sav. Ass'n*, 446 U.S. at 461; *Salem Trust Co.*, 264 U.S. at 189-90; *Intershoe*, 97 F. Supp. 2d at 474 (quoting *Pampillonia*, 138 F.3d at 461).  Plaintiffs were invited three times to explain what individual claim Emer holds; they still have yet to offer a word in response.  Weiss Decl. ¶¶ 8, 10-12, 14.

In the alternative, and to the same end, the Court may simply drop Emer as a party under Rule 21.  "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).  Emer is the paradigm of a dispensable party: on the Complaint's own allegations he paid nothing, lost nothing, and seeks only what the Company already seeks.  *See also* Kelley Decl., ¶¶ 2-6 (Emer has never employed Kelley).  Dropping him would not prejudice anyone—least of all Emer, who retains whatever rights he may has (he has identified none) in whatever forum can properly exercise jurisdiction.

**B.**     **With Emer's Citizenship Disregarded, Complete Diversity Exists And The Amount In Controversy Is Satisfied**

Once Emer is disregarded (or dropped), the diversity analysis is straightforward.  Kelley is a citizen of California—a fact the parties agree on and that Plaintiffs' own proof of service and Kelley's declaration confirm.  Kelley Decl. ¶¶ 2-3; ECF No. 6 at 4.  And the Company is "a business located in the State of New York" with its "principal place of business" in New York County.  Compl. ¶¶ 2, 4; Summons at 1; ECF No. 5-3 ¶ 7.

Plaintiffs are the masters of their complaint, and they will be held to the jurisdictional consequences of their pleading choices: having sworn that the Company is a New York practice headquartered in Manhattan in order to obtain a New York forum, they cannot now be heard to suggest the opposite in order to escape a federal one.[2]

The amount in controversy is not—and could not be—contested.  The Complaint quantifies approximately $332,912 in allegedly unauthorized discounts and approximately $82,300 more in open-quote discounts, and demands forfeiture of all compensation paid to Kelley, plus consequential damages and remediation costs.  Compl. ¶¶ 24, 27, 34, 46, 69.  The Motion does not suggest otherwise.

---

[2]     Should Plaintiffs now reverse course and contend that the "Company" is not a New York citizen—because, for example, it is a mere trade name with no actual existence—that concession would establish that the corporate plaintiff lacks capacity to sue and must be dismissed.  *See* Fed. R. Civ. P. 17(b); *Cmty. Bd. 7 of Borough of Manhattan v. Schaffer*, 84 N.Y.2d 148, 155 (1994) (capacity "concerns a litigant's power to appear and bring its grievance before the court").  It would also confirm that the caption of this action was constructed for forum purposes rather than to reflect the real parties.  Either way, the answer to a pleading artifice is not a remand plus a fee award; at most, it is targeted jurisdictional discovery into the identity and citizenship of the real party in interest on the Plaintiffs' side—which Kelley respectfully requests in the alternative.  *See infra* Section IV(C).

And Removal was procedurally proper and timely: Kelley—the sole defendant—removed within thirty days of service and within one year of commencement. 28 U.S.C. § 1446(b)-(c). And because Kelley is not a citizen of New York, the forum-defendant rule poses no bar. *Id.* § 1441(b)(2). Again, the Motion identifies no procedural defect.

C.    **Plaintiffs' Domicile Evidence Does Not Compel Remand; At Most, It Frames A Factual Question Warranting Jurisdictional Discovery**

Because Emer's citizenship is immaterial, the Court need not resolve where he is domiciled. But even taken on its own terms, Plaintiffs' showing does not carry the Motion.

Plaintiffs concede that domicile is determined through a "totality of the evidence" inquiry in which "[n]o single factor is conclusive." ECF No. 6 at 4. Yet Plaintiffs tender but two non-dispositive documents: a driver's license issued over four years ago (long before the events at issue here took place) and probative of nothing more than the address Emer gave the DMV at that time, and one utility bill showing that Emer maintains an account for a Los Angeles property (without any mention of whether he owns or rents). ECF Nos. 5-4, 5-5. Both are classic evidence of potential *residence* only. As Plaintiffs' own brief takes pains to establish, "an individual's citizenship is determined by his or her domicile, not mere residence," and "[a] person may reside in more than one place." ECF No. 6 at 3 (citing *Van Buskirk*, 935 F.3d at 53; *Palazzo*, 232 F.3d at 42).

A man who owns and operates a Manhattan medical practice bearing his name—as Emer swears he does (ECF No. 5-3 ¶ 7), can be expected to maintain residences and accounts in more than one State. Indeed, the Complaint describes a practice generating over $400,000 in disputed discounts and a $1.6 million open-quote pipeline in just ninety days from only one sales representative. Compl. ¶¶ 24, 27, 32. That is massive. Conspicuously absent from Plaintiffs'

17

submission are the very categories their own brief identifies as probative: tax filings and the State of tax residence, voting history, the location of family, professional service providers, financial accounts, and—above all—any non-conclusory accounting of where Emer actually spends his time and owns property.  ECF No. 6 at 4.  Defense counsel asked for such materials twice; Plaintiffs supplied nothing.  *See generally* ECF No. 5-2.

The Motion's remaining evidence is weaker still.  Counsel's declaration asserts "[u]pon information and belief" that Kelley "admitted" Emer's California domicile in the California action.  ECF No. 5-1 ¶ 11.  An attorney's information-and-belief hearsay assertion is not competent evidence.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  And the underlying allegation does not say what counsel says it says: Kelley's California complaint alleges—itself on information and belief—that Emer was "residing in Los Angeles County."  Weiss Decl. ¶ 4, Ex. 3.  An allegation of *residence*, made on information and belief, in a different action, prior to learning in this action of Emer's extensive ties to New York, is not a judicial admission of *domicile* elsewhere; it is, at most, a piece of the same "totality" that Plaintiffs have declined to develop—and it is fully consistent with Kelley's position here: Emer's citizenship, wherever it lies, cannot defeat diversity because he does not belong in this case.

If the Court concludes that Emer's domicile is material to the outcome, the proper course on this record is not remand but limited, expedited jurisdictional discovery—for example, Emer's state tax filings and claimed state of tax residence, voter registration, the lease or ownership records for any New York residence, and a deposition of no more than a few hours addressed to where Emer lives and works.  Plaintiffs, who resisted every informal request, should not profit from the resulting gaps in the record by obtaining a remand plus a fee award on the strength of two cherry-picked documents.

**D.    Alternatively, The Court May Resolve Defendant's Straightforward Personal-Jurisdiction Defense First**

Finally, if the Court harbors any doubt about the subject-matter-jurisdiction question, it need not resolve that question before disposing of this case: "there is no unyielding jurisdictional hierarchy" between subject-matter and personal jurisdiction, and "in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding" rule requiring the former to be decided first. *Ruhrgas AG*, 526 U.S. at 578, 587-88. Where, as here, the personal-jurisdiction issue is "straightforward," the Court "may" dismiss on personal-jurisdiction grounds without reaching subject-matter jurisdiction. *Id.* at 588; *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431-32 (2007) (holding a court may choose among threshold, non-merits grounds).

The personal-jurisdiction defect is textbook. Kelley is a Californian who was recruited, hired, employed, supervised, paid, and ultimately served in California, by a California employer, for work performed in California. Kelley Decl. ¶¶ 2-6. He is not subject to general jurisdiction in New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And the Complaint pleads no act by Kelley in or directed at New York within any prong of C.P.L.R. 302(a); its only New York facts are Plaintiffs' own asserted presence here, which cannot supply jurisdiction over an out-of-state defendant. *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014). And an out-of-state economic loss merely **felt** in New York does not locate the injury here. *Whitaker*, 261 F.3d at 209.

Kelley's anticipated Motion to Dismiss—previewed to Plaintiffs' counsel and to chambers before the Motion was filed—presents that defense (among others). Remanding would accomplish nothing but to transfer to the state court a case that no New York court, state or federal, can constitutionally adjudicate against Kelley.

19

### E.        Plaintiffs' Request For Fees And "Leave" To Seek Sanctions Should Be Denied

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141; *accord Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (per curiam).  Here, Kelley's removal was objectively reasonable for several reasons.

**First**, the removal was grounded in Plaintiffs' own allegations.

The Complaint alleges a plaintiff "medical practice" headquartered in Manhattan; describes Emer as its founder, owner, and "principal physician"; lays venue in New York County because the practice and "a substantial part of the events" are located there; and says nothing about Emer residing anywhere else.  Compl. ¶¶ 2, 4-5; Summons at 1.

A defendant is entitled—indeed, required by § 1446's thirty-day clock—to assess removability from the initial pleading.  Plaintiffs cannot draft a complaint that trumpets New York and conceals California, and then demand fees because Kelley took the complaint at face value.

**Second**, removal is proper.

As set out above, the nominal-party and fraudulent-joinder doctrines are patent here.  A removal supported by substantial legal argument is by definition objectively reasonable.

**Third**, the record refutes any suggestion of obstinacy.

Defense counsel responded to every overture within hours; twice asked for "anything" further demonstrating the claimed domicile and promised to "review it, evaluate, and consider our position"; explained precisely why a license and a lone utility bill were not dispositive; and three times identified the improper-joinder problem that the Motion still does not address.  *See generally* ECF No. 5-2.  Plaintiffs' counsel's response was to threaten sanctions in nearly every email while refusing to provide the requested information or to engage on the merits.  *Id.*

20

A fee award on this record would invert § 1447(c): it would reward the party that manufactured the jurisdictional ambiguity and stonewalled its resolution, and punish the party that tried to resolve it without motion practice. Plaintiffs' request for "leave" to file a sanctions motion should be denied for the same reasons—no colorable basis for sanctions exists, and none is even articulated.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Mason Kelley respectfully requests that the Court deny Plaintiffs' Motion in its entirety; disregard the citizenship of, or drop pursuant to Rule 21, Plaintiff Dr. Jason Emer, MD; and grant such other and further relief as the Court deems just and proper. Alternatively, Defendant Mason Kelley respectfully requests that the Court permit limited jurisdictional discovery before ruling or resolve his forthcoming personal-jurisdiction defense in the first instance. Defendant Mason Kelley is available for oral argument at the Court's convenience.

Dated: August 5, 2026                 Yours etc.,

    New York, New York                 MARTENSON, HASBROUCK & SIMON, LLP

                                          By:    */s/ Evan S. Weiss*
                                                Evan S. Weiss, Esq.
                                                  *Attorney for Defendant*
                                              One Battery Park Plaza, Suite 1110
                                              New York, New York 10004
                                              (332) 345-2475
                                              eweiss@martensonlaw.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1, the undersigned certifies that this Memorandum Of Law complies with the word-count limitation of Local Civil Rule 7.1(c) because, excluding the caption, table of contents, table of authorities, signature block, and this certificate, it contains [6,656] words, as counted by the word-processing system used to prepare it, which is fewer than the 8,750 words permitted for a memorandum in opposition to a motion.

Dated: August 5, 2026

/s/ Evan S. Weiss
Evan S. Weiss, Esq.

22