UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jason Emer MD New York City;<br>Jason Emer, M.D.;<br>Jason J. Emer, MD, Professional Corporation d/b/a Jason Emer MD New York City, and,<br>Plaintiffs,<br>v.<br><br>Mason Kelley,<br>Defendant. | Case No. 1:26-cv-05862 (JSR)<br><br>Reply Memorandum of Law in Further Support of Plaintiffs' Motion to Remand and For Attorneys' Fees |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO REMAND AND FOR ATTORNEYS' FEES

By: Tyrone Blackburn

## TABLE OF CONTENTS

PRELIMINARY STATEMENT
ARGUMENT
I. This Motion Presents a Single Question of Subject-Matter Jurisdiction; Defendant's Merits Attacks Are Not Properly Before the Court
II. The Amended Complaint Cures a Misnomer of an Always-Existing Party Under 28 U.S.C. § 1653 and Does Not "Add" a New Plaintiff
III. Defendant's Attack on Dr. Emer's Fraud Claim Is a Rule 12(b)(6) Merits Argument That Cannot Be Resolved on a Jurisdictional Motion
   a. The Fraudulent-Joinder Standard Is Not a Merits Inquiry.
   b. Paragraph 74, Read in Context, Pleads a Textbook Out-of-Pocket Fraud Theory.
   c. Dr. Emer Is Not a "Nominal" or "Improper" Party; He Is a Direct Victim.
IV. Dr. Emer's California Domicile Is Established by Uncontroverted Evidence
V. Defendant's Continued Opposition Confirms the Removal Was Objectively Unreasonable and Fees Are Warranted Under § 1447(c)
CONCLUSION

## TABLE OF AUTHORITIES

**Cases**

- *Advani Enters. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir. 1998)
- *Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006)
- *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004)
- *California Public Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004)
- *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100 (2d Cir. 1997)
- *Castillo v. BJ's Wholesale Club*, 645 F. Supp. 3d 85 (E.D.N.Y. 2022)
- *City of N.Y. v. Exxon Mobil Corp.*, 154 F.4th 36 (2d Cir. 2025)
- *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156 (2d Cir. 2009)
- *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567 (2004)
- *Hallingby v. Hallingby*, 574 F.3d 51 (2d Cir. 2009)
- *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98 (2d Cir. 2015)
- *Jacobs v. Patent Enf't Fund, Inc.*, 230 F.3d 565 (2d Cir. 2000)
- *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194 (2d Cir. 1967)
- *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996)
- *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2d Cir. 1994)
- *Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229 (E.D.N.Y. 2014)
- *Mihalakis v. Cabrini Med. Ctr.*, 151 A.D.2d 345 (1st Dep't 1989)
- *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22 (D. Conn. 2015)
- *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224 (S.D.N.Y. 1991)
- *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989)
- *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003)
- *Palazzo v. Corio*, 232 F.3d 38 (2d Cir. 2000)
- *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998)
- *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613 (2d Cir. 2019)
- *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889 (2d Cir. 1983)

- *Reno v. Bull*, 226 N.Y. 546 (1919)
- *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)
- *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)
- *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)
- *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991)
- *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25 (1st Dep't 2010)
- *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)
- *Stewart v. Singh*, 808 F. Supp. 3d 533 (E.D.N.Y. 2025)
- *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59 (2d Cir. 1999)
- *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320 (S.D.N.Y. 2005)


**Statutes**


- 28 U.S.C. § 1332
- 28 U.S.C. § 1359
- 28 U.S.C. § 1367
- 28 U.S.C. § 1447(c)
- 28 U.S.C. § 1447(e)
- 28 U.S.C. § 1653


**Rules**


- Fed. R. Civ. P. 9(b)
- Fed. R. Civ. P. 12(b)(6)
- Fed. R. Civ. P. 17
- Fed. R. Civ. P. 19(b)
- Fed. R. Civ. P. 21
- S.D.N.Y. Local Civil Rule 7.1

## PRELIMINARY STATEMENT

This is a motion about subject-matter jurisdiction. It is not a motion to dismiss, and it is not a vehicle for testing the sufficiency of Plaintiffs' claims on the merits. The only question before the Court is whether, at the time of removal, the parties were completely diverse under 28 U.S.C. § 1332(a). They were not. Both Plaintiffs and Defendant are, and at the time of removal were, citizens of California. Complete diversity is therefore absent, and this action must be remanded under 28 U.S.C. § 1447(c).

Rather than meet the jurisdictional issue on its own terms, Defendant's supplemental opposition (ECF No. 15, the "Supplemental Opposition") urges the Court to (i) ignore the operative pleading, (ii) resolve the sufficiency of Dr. Emer's fraud claim on the merits, (iii) drop Dr. Emer under Rule 21 to manufacture the diversity Defendant needs, and (iv) invert the fee analysis against Plaintiffs for correcting a misnomer in the name of an always-existing party. None of these arguments is properly before the Court on a jurisdictional motion, and none succeeds on its own terms.

First, Defendant is wrong that the First Amended Complaint (ECF No. 14, the "Amended Complaint") must be "ignored" for jurisdictional purposes. Plaintiffs have not added a party, have not destroyed jurisdiction that once existed, and have not manufactured any new jurisdictional fact. Plaintiffs' correction of the corporate plaintiff's name cures, at most, a misnomer; it does not alter the citizenship facts that governed at the time of removal. Those facts remain what they were: Plaintiffs and Defendant are all California citizens. Section 1653 permits correction of defective jurisdictional allegations, but it does not permit a party to create federal jurisdiction by changing jurisdictional facts where jurisdiction did not actually exist. 28 U.S.C. § 1653. Because all parties were California citizens at removal, the correction confirms the absence of diversity rather than curing it. 28 U.S.C. § 1447(e) — the authorities Defendant marshals — address entirely different situations and are inapposite.

Second, Defendant's argument that Dr. Emer is not a proper party because his fraud claim is supposedly deficient on causation is a Rule 12(b)(6) merits attack. It has no place on a jurisdictional motion. The Second Circuit has repeatedly held that a removing defendant asserting fraudulent joinder bears a heavy burden: it must prove by clear and convincing evidence either outright fraud in the plaintiff's pleadings or that, resolving factual and legal ambiguities in the plaintiff's favor, there is no possibility, based on the pleadings, that the plaintiff can state a cause

of action against the non-diverse defendant in state court. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). Defendant does not — and cannot — carry that heavy burden. Even assuming Defendant could contest the merits of the state-law fraud claim, this Court may not resolve that merits dispute unless it first has subject-matter jurisdiction. Subject-matter jurisdiction is a threshold question that must be resolved before the Court proceeds to the merits, and where jurisdiction is lacking in a removed action, remand — not a merit ruling — is required. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

Third, Defendant's remaining domicile argument — that Dr. Emer's California voter registration, medical license, and residence "do not go all the way" — is now met by uncontroverted evidence and by Defendant's own concession, made through counsel at the prior argument, that Dr. Emer is in New York only a portion of each year. Domicile is not a majority-of-time test. It is fixed residence plus intent to remain, and Plaintiffs have supplied both.

Fourth, Defendant's sanctions posture — that his removal was objectively reasonable and that sanctions should run against Plaintiffs for filing the Amended Complaint — is untenable. Defendant removed without investigating public California Secretary of State records that identify the corporate plaintiff as a California professional corporation. A correction of a plaintiff's misnomer under § 1653 is not a change of position; it is the pleading cure that federal law expressly permits. The removal was objectively unreasonable, and fees are warranted under 28 U.S.C. § 1447(c).

The Court should grant the motion, remand this action to the Supreme Court of the State of New York, County of New York, and award Plaintiffs their just costs and reasonable attorneys' fees under § 1447(c).

## ARGUMENT

### I. This Motion Presents a Single Question of Subject-Matter Jurisdiction; Defendant's Merits Attacks Are Not Properly Before the Court

The Supplemental Opposition proceeds as though this were a motion to dismiss Dr. Emer's fraud claim on the merits. It is not. The relevant question for this challenge is whether complete diversity existed at the time of removal. Diversity jurisdiction under § 1332(a) requires complete diversity — each plaintiff must be a citizen of a different State from each defendant — and the Second Circuit evaluates a defendant's right to remove at the time the notice of removal is filed. Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009). Because Defendant, as the removing party, invokes federal jurisdiction, he bears the burden of establishing it. California Public Employees'

Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). [A]ll doubts are resolved against removability. Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994). Those principles do not authorize a merits inquiry into the strength of a plaintiff's state-law claim as a substitute for the jurisdictional showing the removing party must make.

Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 119 S. Ct. 1563 (1999). In a removed action, Congress has made the consequence mandatory: “If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.” 28 U.S.C. § 1447(c). Because complete diversity is absent, this Court lacks diversity jurisdiction, and remand is required. The state court, not this Court, decides whether Dr. Emer's fraud claim satisfies New York's out-of-pocket rule, whether his damages theory holds together, and whether the corporate plaintiff and the individual plaintiff are aligned. Those are the very questions the Supplemental Opposition invites the Court to decide. They are not properly before it.

The only merits-adjacent doctrine that permits a jurisdictional court to look past a named plaintiff is fraudulent joinder — and that doctrine imposes on Defendant one of the heaviest burdens known to civil law. Castillo v. BJ'S Wholesale Club, 645 F. Supp. 3d 85 (E.D.N.Y. 2022). To disregard Dr. Emer's citizenship, Defendant must prove by clear and convincing evidence either outright fraud in the pleadings or that there is no possibility, based on the pleadings, that Dr. Emer can state a cause of action in state court. Several District courts have held that, all factual and legal issues must be resolved in favor of the plaintiff, and the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. If there is even a possibility that a state court would find that the complaint states a cause of action, the federal court must find that joinder was proper and remand the case to state court. Pampillonia v. RJR Nabisco. Inc., 138 F.3d 459 (2d Cir. 1998). Defendant does not meet that standard, as shown below.

II. The Amended Complaint Cures a Misnomer of an Always-Existing Party Under 28 U.S.C. § 1653 and Does Not "Add" a New Plaintiff

Defendant's lead argument is that the Amended Complaint should be ignored because post-removal amendments cannot defeat federal jurisdiction. Supp. Opp. at 4-6. That principle is not in dispute — but it is not what happened here. Plaintiffs are not using an amendment to destroy a jurisdiction that once existed. Plaintiffs are confirming, pursuant to 28 U.S.C. § 1653, that federal

jurisdiction never existed because the parties have always been, and remain, citizens of the same State.[1]

28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 USCS § 1653. The Second Circuit has consistently recognized that § 1653 should be construed "liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." Advani Enters. v. Underwriters at Lloyds, 140 F.3d 157, 161 (1998) (citing John Birch Soc'y v. National Broad. Co., 377 F.2d 194, 198-99 (2d Cir. 1967)). Such amendments will be freely permitted where necessary to avoid dismissal on purely technical grounds. Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (1997). However, even liberally construed, § 1653 does not allow a plaintiff to amend its complaint to substitute a new cause of action over which there is subject-matter jurisdiction for one in which there is not. Advani Enters. v. Underwriters at Lloyds, 140 F.3d 157, 161 (1998). It cannot be used to remedy underlying, substantive jurisdictional defects, nor to substitute new claims or parties to retroactively produce jurisdiction where none existed before. Advani Enters., 140 F.3d at 161; Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co., 700 F.2d 889, 893 (2d Cir. 1983). The Supreme Court has held that § 1653 addresses only incorrect statements about jurisdiction that actually exists and not defects in the jurisdictional facts themselves. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S. Ct. 2218 (1989). A correction that reflects the true, pre-existing citizenship of a party does not defeat jurisdiction; it clarifies whether jurisdiction ever existed in the first place.

That is precisely what the Amended Complaint does. The original state-court complaint named the corporate plaintiff by its assumed name, "Jason Emer MD New York City," without identifying its true legal name. Am. Compl. ¶ 4 (ECF No. 14). No such separate legal entity exists — a point Defendant himself has made throughout this litigation. Weiss Decl. ¶ 2 & Ex. 1 (ECF No. 9-1). The only legal entity that has ever answered to that name is Jason J. Emer, MD, Professional Corporation — a California professional corporation with its principal office in West Hollywood, California. Am. Compl. ¶ 2; *see also* Weiss Decl. Ex. 2 (California Secretary of State Statement of Information). The Amended Complaint identifies that entity by its full legal name

[1] To the extent Defendant's Supplemental Opposition suggests that the number of docket entries associated with the Amended Complaint reflects successive substantive changes to Plaintiffs' allegations, the record shows otherwise. The Clerk of Court directed re-filing to address filing and formatting requirements; the citizenship and diversity allegations have been identical across each iteration, and ECF No. 14 is the operative pleading.

and expressly confirms that the corrected name refers to "the originally named Plaintiff and does not add or substitute a new plaintiff." Am. Compl. ¶ 4.

Defendant's principal authorities are inapposite:

In Touch Concepts, Inc. v. Cellco P'ship, 788 F.3d 98 (2d Cir. 2015), addressed a plaintiff attempting to destroy Class Action Fairness Act (CAFA) diversity jurisdiction that undisputedly existed at removal by amending its complaint to drop all class-action allegations. Id. at 101-02. That is the opposite of the posture here. Plaintiffs are not destroying a jurisdiction that existed; they are demonstrating that federal jurisdiction never existed because complete diversity never existed.

Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 145 S. Ct. 41 (2025), is a case arising from a removed federal-question action holding that a post-removal amendment excising all federal claims divests the district court of federal-question jurisdiction and, consequently, its supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367. The Court's holding was based on the text of § 1367—which applies equally to original and removed actions—and the procedural rule that federal jurisdiction must be determined by the operative amended pleading. Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 145 S. Ct. 41 (2025). The Amended Complaint does not alter that inquiry; it confirms what was true at the moment of removal: all parties are California citizens, complete diversity was absent, and this Court lacks subject-matter jurisdiction. Remand is therefore required.

28 U.S.C. § 1447(e) governs post-removal joinder of additional defendants only when their joinder would destroy subject-matter jurisdiction. The statute explicitly refers only to the situation where a plaintiff seeks to join additional, diversity-destroying defendants. Supp. Opp. at 5. Plaintiffs have not sought to join any additional defendant. Section 1447(e) has no application to a plaintiff's correction of the name of an existing corporate plaintiff.

Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S. Ct. 586 (1938), and Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59 (2d Cir. 1999), establish that jurisdictional facts are assessed as they existed at the time of removal and that post-removal changes in those facts do not divest a court of jurisdiction properly acquired. Neither case addresses — let alone forecloses — a plaintiff's ability to amend defective jurisdictional allegations under 28 U.S.C. § 1653. Where diversity jurisdiction in fact existed at the time of removal, and the jurisdictional pleading merely failed to allege those facts adequately, § 1653 permits

amendment to cure the defective allegation. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S. Ct. 2218 (1989). Such an amendment does not alter the jurisdictional facts; it corrects the pleading to reflect jurisdiction that already existed. Jacobs v. Patent Enf't Fund, Inc., 230 F.3d 565 (2d Cir. 2000).

Defendant repeatedly characterizes the Amended Complaint as adding an additional Plaintiff. Supp. Opp. at 6. That characterization is inaccurate on the face of the pleading. There is one corporate plaintiff. It is, and always has been, a single California professional corporation. The Amended Complaint identifies that entity by its legal name rather than only by its New York assumed name. It adds no party. It substitutes no party. It does not implicate Rule 21, Rule 17, or § 1447(e). Plaintiffs' amendment does not manufacture new jurisdictional facts; it corrects a misnomer and conforms the pleading to the facts as they existed at removal. That is the kind of defective jurisdictional allegation § 1653 permits courts to amend, while Newman-Green forbids using § 1653 to create jurisdiction where the underlying jurisdictional facts did not exist. 28 U.S.C. § 1653.

Defendant's related complaint that counsel "verified" the original state-court complaint misses the point. Supp. Opp. at 5. A verification does not immunize a pleading error from correction under § 1653, and no rule of law converts a misdescription of a corporate plaintiff's legal name into an estoppel against the jurisdictional reality. To hold otherwise would elevate a scrivener's error over the diversity statute itself.

III. Defendant's Attack on Dr. Emer's Fraud Claim Is a Rule 12(b)(6) Merits Argument That Cannot Be Resolved on a Jurisdictional Motion

The centerpiece of the Supplemental Opposition is a Rule 12(b)(6) sufficiency attack dressed up in jurisdictional clothing. Defendant seizes on Paragraph 74 of the Amended Complaint — which states that the fraud claim is distinct from the underlying unauthorized pricing conduct — and argues that this language dooms Dr. Emer's fraud damages theory as a matter of state law. Supp. Opp. at 7. Defendant then asks the Court to conclude that, because the fraud claim allegedly cannot succeed on the merits, Dr. Emer is "not a proper party" whose citizenship should be disregarded under Rule 21. Id.

This argument fails at two levels. First, it is procedurally improper: a fraudulent-joinder inquiry is not a Rule 12(b)(6) motion in disguise. Pampillonia v. RJR Nabisco. Inc., 138 F.3d 459 (2d Cir. 1998). To the extent Defendant's argument would require this Court to make a merits ruling in Defendant's favor before jurisdiction is established, Steel Co. v. Citizens for a Better

Env't, 523 U.S. 83, 118 S. Ct. 1003 (1998), forecloses that approach: a federal court has no authority to proceed to the merits — including granting merits-based relief — in the absence of subject-matter jurisdiction. Id. In any event, the argument fails on its own terms. The Amended Complaint pleads a coherent out-of-pocket fraud theory with the particularity Rule 9(b) requires, and that claim readily clears Pampillonia's demanding "no possibility" bar — a burden that rests entirely on Defendant. Pampillonia, 138 F.3d at 461.

A. *The Fraudulent-Joinder Standard Is Not a Merits Inquiry.*

To disregard a non-diverse party's citizenship on fraudulent-joinder grounds, the removing party bears a heavy burden: it must demonstrate either outright fraud in the pleadings or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action involving the non-diverse party in state court. Pampillonia v. RJR Nabisco. Inc., 138 F.3d 459 (2d Cir. 1998). All factual and legal issues must be resolved in the plaintiff's favor. Id.; Briarpatch Ltd., L.P. v. Phx. Pictures, Inc., 373 F.3d 296 (2d Cir. 2004). Courts in this Circuit therefore scrutinize the claim more leniently than they would on a Rule 12(b)(6) motion; it is not enough to show merely that the complaint fails to state a claim. Mihok v. Medtronic, Inc., 119 F. Supp. 3d 22 (D. Conn. 2015).

Defendant's causation argument does not come close to that standard. He does not identify any binding state-court decision holding that a fraud plaintiff who alleges reliance-induced personal expenditures cannot recover under New York's out-of-pocket rule. He does not cite any authority that a fraud claim asserting damages distinct from the underlying misconduct is doomed on the pleadings. Instead, he offers a strained reading of a single paragraph — Paragraph 74 — divorced from the fifteen paragraphs that surround it. That is not the demonstration Pampillonia requires.

B. *Paragraph 74, Read in Context, Pleads a Textbook Out-of-Pocket Fraud Theory.*

Paragraph 74 states that the September 24, 2025, fraudulent representations and omissions were distinct from the underlying unauthorized pricing conduct and that the fraud induced Plaintiffs to take — or refrain from taking — additional action that they otherwise would not have taken, thereby causing reliance-based losses separate from the economic consequences of the underlying unauthorized discounts. Am. Compl. ¶ 74. That paragraph is not a concession that Dr. Emer suffered no fraud damages. It is a clarification — required by New York's out-of-pocket rule — that Dr. Emer does not seek to recover, through the fraud claim, the corporate losses caused by

the underlying pricing misconduct. Instead, Dr. Emer seeks recovery of the funds he personally advanced in reliance on Defendant's misrepresentations. Am. Compl. ¶¶ 44-48, 77-82.

The causal chain pleaded in the Amended Complaint is straightforward, and it is the quintessential fraud-damages theory New York law recognizes. On September 24, 2025, Defendant made materially false representations and omissions to Dr. Emer to induce Dr. Emer to refrain from terminating him. Am. Compl. ¶¶ 36-43. Dr. Emer relied on those representations by refraining from immediate termination and by using his own personal funds to satisfy operating obligations during the reliance period. Id. ¶¶ 44-45, 77-78. Those personal expenditures came from Dr. Emer's individual assets, and because he received nothing of value in return, they reduced his personal net worth dollar-for-dollar. Id. ¶¶ 46, 79. Under New York law, the measure of damages under the out-of-pocket rule is 'the difference between the value of what was given up and what was received in exchange.' Mihalakis v. Cabrini Med. Ctr., 151 A.D.2d 345, 542 N.Y.S.2d 988 (App. Div. 1989); see also Starr Found. v. Am. Int'l Grp., Inc., 2010 NY Slip Op 4526, 76 A.D.3d 25, 901 N.Y.S.2d 246 (App. Div.). Had Defendant disclosed the truth, Dr. Emer would have terminated him immediately and would not have made those personal advances. Am. Compl. ¶¶ 48, 80.

The out-of-pocket loss Dr. Emer seeks is causally linked to the fraud through reliance — not through the underlying pricing conduct. When a plaintiff is fraudulently induced to part with money or property, the measure of damages is the loss directly sustained as a result of that reliance — the difference between the value of what was given and the value of what was received. That is the classic out-of-pocket rule New York courts have applied for more than a century. Reno v. Bull, 226 N.Y. 546, 124 N.E. 144 (1919); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). Where, as here, the plaintiff received nothing of value in return for the expenditures at issue, the out-of-pocket loss equals the full amount expended in reliance on the fraud.

Defendant's reading of Paragraph 74 — that Dr. Emer somehow pleaded away his own damages — is not a fair reading of the pleading and, in any event, is a quintessential merits question. Any doubts about the propriety of removal are resolved in favor of remand. Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043 (2d Cir. 1991). This standard is satisfied, and the case must be remanded.

C. *Dr. Emer Is Not a "Nominal" or "Improper" Party; He Is a Direct Victim.*

Defendant's Rule 21 request rests on the premise that Dr. Emer is a nominal party whose citizenship the Court may disregard. He is not. A party is deemed nominal if, based on the substantive law of the state where the federal court sits, no cause of action or claim for relief is or could be stated against him or on his behalf. Zerafa v. Montefiore Hosp. Hous. Co., 403 F. Supp. 2d 320 (S.D.N.Y. 2005). Dr. Emer is the founder, sole shareholder, and principal physician of the Practice. He personally alleges that he was directly defrauded by Defendant and personally sustained out-of-pocket losses from his individual assets. Am. Compl. ¶¶ 7, 44-48, 77-82. A party who alleges direct personal harm and seeks to recover for its own losses possesses the substantive right being enforced and is therefore a real party in interest whose citizenship must be counted for purposes of diversity jurisdiction. *See* Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003). Defendant's attempt to recast Dr. Emer as a nominal party through Rule 21 finds no support in the pleadings or the law.

Nor should the Court use Rule 21 to drop Dr. Emer merely to create a federal forum that did not exist at removal. Rule 21 permits a court to drop a nondiverse party to preserve diversity jurisdiction, but only if the party is dispensable under Rule 19(b). See CP Sols. PTE, Ltd. v. GE, 553 F.3d 156 (2d Cir. 2009). That is a party-specific, equitable inquiry, not a license to excise a named plaintiff with a direct stake in the case. In removed diversity cases, the general rule is that diversity must exist both when the action is filed in state court and when removal is sought. Blockbuster, Inc. v. Galeno, 472 F.3d 53 (2d Cir. 2006). Federal courts have cautioned that Rule 21 may not be used in the removal context as a vehicle to conjure jurisdiction that was absent at the time of removal — severance is permissible only to preserve diversity that already exists, not to create it. *See* 28 U.S.C. § 1359. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 124 S. Ct. 1920 (2004) reinforces the same limiting principle: Rule 21 may be used to drop an actual dispensable party from the litigation, but it cannot cure a jurisdictional defect by recharacterizing the citizenship of a continuing party or otherwise altering the jurisdictional facts that existed when the case was filed. The Supreme Court held that a post-filing change in a partnership's membership — which eliminated the nondiverse partners — could not retroactively cure the lack of complete diversity that existed at commencement, distinguishing that circumstance from the permissible use of Rule 21 to remove a dispensable nondiverse party entirely. Id. Because Dr. Emer is a named plaintiff asserting his own colorable claim, Defendant cannot invoke Rule 21

as an end-run around the absence of complete diversity. If subject-matter jurisdiction is lacking, the statutory consequence is remand. 28 U.S.C. § 1447(c).

## IV. Dr. Emer's California Domicile Is Established by Uncontroverted Evidence

Defendant's remaining domicile argument is that Dr. Emer's California voter registration, California medical license, California residence, and stated intent to remain in California do not get all the way to establishing domicile because Dr. Emer has extensive ties to New York and, as counsel acknowledged at oral argument, spends part of each year in New York. Supp. Opp. at 6-7. That is not the domicile standard.

Domicile is not a majority-of-time test. An individual's domicile is the place where a person has their true fixed home and principal establishment, and to which, whenever they are absent, they have the intention of returning. A person may have but one domicile at a time. Palazzo v. Corio, 232 F.3d 38 (2d Cir. 2000). For purposes of diversity jurisdiction, domicile depends on physical presence in the state and an intent to remain there indefinitely; where a party has connections to more than one state, courts examine the totality of the evidence, including residence, voting, taxes, property, driver's and other licenses, bank accounts, memberships, places of business or employment, and related objective indicia of intent. Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224 (S.D.N.Y. 1991). Here, those objective factors all point to California:

- *Residence.* Dr. Emer resides at 2519 Chislehurst Place, Los Angeles, California, and identifies that address as his principal home. Am. Compl. ¶¶ 5-6; Emer Decl. ¶ 3.
- *Voter registration.* Dr. Emer is an actively registered California voter in Los Angeles County. Am. Compl. Ex. A (California Secretary of State record confirming active registration).
- *Driver's license.* Dr. Emer holds a California driver's license issued to his Los Angeles residence. Blackburn Decl. Ex. A (California driver's license).
- *Professional license.* Dr. Emer is licensed to practice medicine in California, and his principal professional practice is in Los Angeles County. Am. Compl. ¶ 6.
- *Utility service.* Dr. Emer maintains ongoing utility service, including a Los Angeles Department of Water and Power account, in his name at the Los Angeles residence — objective evidence of an ongoing household. Blackburn Decl. Ex. B.
- *Intent to remain.* Dr. Emer has sworn under oath that he intends to remain in California indefinitely. Emer Decl. ¶¶ 4-5; Am. Compl. ¶ 6.

Defendant offers no contrary evidence. He identifies no New York residence, no New York voter registration, no New York tax filing, no New York driver's license, and no New York professional license held by Dr. Emer. Instead, Defendant asks the Court to draw an inference from the mere fact that Dr. Emer travels to New York periodically to oversee the Practice's satellite office. An individual's citizenship for the purposes of diversity jurisdiction under 28 USCS §

1332 is determined strictly by their domicile, defined as the place where a person has their true fixed home and principal establishment, and to which they intend to return whenever absent Palazzo v. Corio. Because a person has only one domicile at any given time, ownership of an out-of-state business or secondary property does not negate an established domicile or establish a new citizenship. Mantis Transp. v. Kenner, 45 F. Supp. 3d 229 (E.D.N.Y. 2014). To establish a change of domicile, a party must satisfy the heavy burden of proving both physical residence in the new locality and an intent to remain there indefinitely.

Where a removing defendant fails to meet its burden to establish complete diversity, a district court has the discretion to permit limited jurisdictional discovery to determine whether complete diversity exists. Stewart v. Singh, 808 F. Supp. 3d 533 (E.D.N.Y. 2025). However, the Second Circuit has cautioned that this discretion must be exercised with care, as removal procedures are designed to secure a rapid and prompt determination of the proper forum, and courts should avoid prolonged preliminary litigation over removal where a party failed in the first instance to avert a proper jurisdictional basis. Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613 (2d Cir. 2019). Defendant has made no prima facie showing of New York domicile at all. He offers no evidence — merely a request to go looking for some. That is not the office of jurisdictional discovery, and the Court should decline the invitation to keep this case indefinitely on the federal docket while Defendant searches for a jurisdictional theory he did not develop before removing.

V. Defendant's Continued Opposition Confirms the Removal Was Objectively Unreasonable and Fees Are Warranted Under § 1447(c)

Section 1447(c) authorizes a remand order to require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 USCS § 1447. Absent unusual circumstances, fees may be awarded only where the removing party lacked an objectively reasonable basis for seeking removal. City of N.Y. v. Exxon Mobil Corp., 154 F.4th 36 (2d Cir. 2025). The Second Circuit applies that standard and reviews fee awards under § 1447(c) for abuse of discretion. Id. Here, the removal was objectively unreasonable.

Defendant now says that the necessity of the § 1653 correction proves his removal was reasonable. Supp. Opp. at 7-8. That gets the analysis exactly backwards. The reason Plaintiffs filed the Amended Complaint was to clarify — through a routine § 1653 correction — that the corporate plaintiff was and is a California professional corporation. That information was publicly available from the California Secretary of State at the time Defendant removed. See Weiss Decl. Ex. 2

(California Statement of Information Defendant himself submitted). Defendant elected to remove without meaningfully investigating that public record, and he chose to persist even after Plaintiffs supplied Dr. Emer's California driver's license, California voter registration, Los Angeles utility bill, and Defendant's own California pleading identifying Dr. Emer as a Los Angeles resident. Where publicly available facts made the absence of diversity apparent and the removing party had no colorable argument that removal was proper, the removal lacked an objectively reasonable basis under § 1447(c).

Defendant's inverted request for sanctions against Plaintiffs is not seriously advanced and should be denied out of hand. A § 1653 correction is precisely the mechanism federal law provides for curing defective jurisdictional allegations, and courts routinely permit it. Newman-Green, 490 U.S. at 831-32. Sanctioning a party for using a statutory cure to prove that federal jurisdiction never existed would turn § 1653 on its head.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' moving papers, Plaintiffs respectfully request that the Court grant Plaintiffs' motion, remand this action to the Supreme Court of the State of New York, County of New York, award Plaintiffs their just costs and reasonable attorneys' fees under 28 U.S.C. § 1447(c), and grant such other relief as is just and proper.

Dated: Brooklyn, New York
September 8, 2026

Respectfully submitted,

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC

Attorneys for Plaintiffs